# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 19, 2010

No.  09-60040

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM C. BRELAND, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No.  1:08-CR-85-1

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM[*]

Defendant William C. Breland, Jr. appeals from a final judgment of conviction entered by the United States District Court for the Southern District of Mississippi for making a false claim to the Federal Emergency Management Agency for Hurricane Katrina disaster relief benefits under 18 U.S.C. §§ 287 and 2, aiding and abetting another in making a false claim to FEMA for Hurricane Katrina disaster relief benefits, making false statements to FEMA in violation of 18 U.S.C. §§ 1001 and 2, theft of Government funds in excess of $1,000 under

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 09-60040

18 U.S.C. § 641, and three counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Breland challenges his convictions on the grounds that (1) the district court committed reversible error by permitting the Government's witness, Debra Henry, to testify as a lay witness rather than as an expert witness, (2) Breland's Sixth Amendment right of confrontation was violated when the Government failed to call as a witness the FEMA representative who took Breland's application over the phone, and (3) the evidence was factually insufficient to support the convictions. For the reasons given below, we AFFIRM the district court's judgment.

## I.

In December of 2004, Breland and his girlfriend, Amber Dungan, moved from Arizona to the Mississippi Gulf Coast area. Between that date and the landfall of Hurricane Katrina on August 29, 2005, Breland and Dungan moved from place to place. For some time period during these months—the duration of which was disputed at trial—Breland and Dungan stayed at the home owned by Breland's father at 4096 Olga Drive, Lot T, Pass Christian, Mississippi. In September of 2005, Breland filed an application with FEMA for disaster relief assistance for damages sustained to the home he claimed as his residence—4096 Olga Drive. Breland submitted his application information by telephone to a FEMA agent, and his information was compiled in a file. As a result of his application, FEMA awarded Breland $8,907.46 in disaster relief assistance: $2,000 for expedited housing assistance, $2,358 for rental assistance, and $4,549.46 for personal property loss. Breland also received a FEMA travel trailer.

Shortly thereafter, Breland's father made a complaint to FEMA alleging that Breland had fraudulently claimed to be living at the 4096 Olga Drive residence at the time of Hurricane Katrina. According to Breland's father, Breland had stayed at the residence for a short period of time, but did not live

No. 09-60040

at the address immediately prior to or during the time of Hurricane Katrina. Following an investigation, Breland and co-Defendant Amber Dungan, were charged in an eleven-count indictment for crimes relating to the alleged fraudulent receipt of FEMA disaster relief benefits.

In October of 2008, Breland and Dungan went to trial. The parties contested whether Breland lived at the 4096 Olga Drive address prior to and at the time of Hurricane Katrina, and whether this address was his "primary residence" for the purpose of FEMA disaster relief eligibility. The Government called as its first witness Debra Henry, a FEMA program specialist with twelve years of experience, to testify about the policies and procedures followed by FEMA at the time of Breland's application. After a number of questions concerning Henry's years of experience and her specialized training, Henry was asked to explain the legal basis for FEMA. At this point, Breland's counsel objected that Henry was providing expert testimony within the scope of Federal Rule of Evidence 702, but the court did not rule on this objection and the objection was never re-urged. Henry proceeded to testify about her role as a registration intake specialist and the process FEMA used to take applications for Hurricane Katrina relief. She also explained that to receive FEMA benefits, applicants were required to prove, among other facts, that they lived in the damaged home at the time of the disaster.

After further questioning about FEMA's procedures, the Government moved to admit Government Exhibit 20, Breland's FEMA application packet into evidence under the business records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6). Breland's counsel objected that its admission would deny Breland the right to confront his accuser because the records contained hearsay, and he would not be able to cross-examine the FEMA representative who recorded Breland's information in the file. The objection was overruled, and the application was admitted as a business record.

No. 09-60040

Following the admission of Breland's application packet, Henry testified about the process FEMA used to obtain the information in an applicant's file. She explained that when FEMA receives a Katrina disaster relief application over the phone, the applicant is asked a series of questions from a designated script, and each applicant is asked the same questions. Henry testified that Breland's file reflected that he provided 4096 Olga Drive as his address, and that FEMA later identified this address as being Breland's "primary residence." Henry testified that the Code of Federal Regulations defined primary residence as where a person "resides for the majority of the year," and that a showing of "primary residence" was a mandatory criterion for receiving FEMA disaster relief assistance. Henry further testified that the definition was not provided to applicants upon registration, but that eligibility requirements were set out in the copy of the "Help After a Disaster" Guide which each applicant received. The Guide was admitted as Government Exhibit Four.

Henry thereafter testified regarding the definition of "primary residence" in the context of receiving FEMA disaster relief benefits, including which representations made during Breland's application intake would trigger his eligibility for various forms of assistance. She also explained the significance of certain factors critical to FEMA's determination of eligibility for assistance, such as the number of people residing in the home. On cross-examination, Breland's counsel brought forth further testimony from Henry on the topic of the definition of "primary residence," eliciting conflicting definitions and an admission that the determination was not "black and white." Breland's counsel did not object to any of Henry's testimony regarding "primary residence" on the ground that it exceeded the scope of proper lay witness testimony, and he did not move to strike her responses on this subject on cross-examination.

Following Henry's testimony, the Government called Jessica Duval, Amanda McMahan, William Breland Sr., and FBI agent James Grunwald to

4

No. 09-60040

testify about Breland's residence prior to Hurricane Katrina. All testified that Breland and Dungan did not live at 4096 Olga Drive continuously throughout 2005. The Defense called Breland's uncle, Frank Patton, and Breland's sister, Angela Breland, to testify on his behalf. Both testified that Breland stayed at 4096 Olga Drive at various points during 2005, but that Breland also stayed with various other people during that time period. Angela Breland testified that Breland and Dungan had some personal property at the residence. At the close of the three-day trial, Breland was convicted on all charges. In January of 2009, he was sentenced to twenty-four months in prison and three years of supervised release. He and Dungan were ordered to pay $29,619.66 jointly in restitution, and Breland was ordered to pay a special assessment of $700.

## II.

### A. Standard of Review

Breland argues that the district court erred in permitting Henry to testify as to the meaning of the term "primary residence" when she had not been offered or qualified as an expert. Before proceeding to the merits of the defendant's claim, we must  first determine the proper standard of review. Both parties suggested in briefing that "abuse of discretion" is the appropriate standard, but our court "must consider the standard *sua sponte* because 'no party has the power to control our standard of review.'" *United States v. Peltier*, 505 F.3d 389, 391 n.1 (5th Cir. 2007) (quoting *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir.  1992)). Where error is properly preserved by a timely objection, we review a district court's evidentiary rulings for abuse of discretion. *See United States v. Griffin*, 324 F.3d 330, 347 (5th Cir. 2003). But where "the complaining party failed to object at trial, we review only for plain error." *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006).

The record does not support Breland's argument that he objected to the testimony he now challenges on the basis of improper expert testimony. The

No. 09-60040

Government first introduced the subject of "primary residence" by asking Henry whether the definition of "primary residence" was given to FEMA applicants during the telephone intake, and Henry responded that it was not given to the applicants. The Government then asked Henry "What is FEMA's definition of primary residence?" Breland's counsel objected, arguing that "[i]f [the Government] didn't give [the definition] to defendants, what difference would it make what FEMA's definition is?" Breland now contends that Henry's response and subsequent testimony should have been excluded as improper expert witness testimony. Breland's counsel objected to the relevance of the testimony, not its characterization as impermissible expert testimony. Therefore, "our review is only for plain error." *United States v. Mares,* 402 F.3d 511, 520 (5th Cir. 2005). Breland's counsel did make an objection based on impermissible expert testimony much earlier in Henry's testimony, when the government asked "What is the legal basis for FEMA?," but Breland does not challenge Henry's response to this question. Moreover, the court did not rule on this objection, but stated that "I don't know where she's going with it. Let's see." This statement indicated that the court needed to hear more of Henry's testimony before ruling on whether the objection could be sustained, but Breland's counsel did not reassert his objection when Henry testified about FEMA's definition of "primary residence." In fact, Breland's counsel never again raised a Rule 702 objection throughout the remainder of her testimony.

It is well-settled that a party must make a contemporaneous objection to the disputed testimony, unless the court grants a continuing objection. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 696-97 (5th Cir. 2001); *Bailey v. S. Pac. Transp. Co.*, 613 F.2d 1385, 1389 (5th Cir. 1980) (per curiam); *see United States v. Sanchez-Hernandez*, 507 F.3d 826, 831 (5th Cir. 2007) (finding error preserved where the trial court granted defense counsel a "continuing objection to [the] line of questions"). None was granted here, so we review for plain error.

6

*B. Analysis*

Breland argues that the district court erred by (1) allowing Debra Henry to testify as a lay witness when "[her] descriptions of her job duties support a finding that she was an expert in the field of FEMA disaster relief assistance," and (2) admitting Henry's testimony regarding the term "primary residence"—a requirement for FEMA disaster relief defined in the Code of Federal Regulations—on the ground that such testimony exceeds the scope of lay witness testimony permissible under Federal Rule of Evidence 701.

Rule 701 limits lay witness testimony to "those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Therefore, "*any* part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008). Our court has further clarified that the "distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Id.* (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendments).

Breland first argues that Henry testified as "an expert and specialist in her field" without being offered as an expert rather than as a lay witness, as demonstrated by Henry's introductory testimony highlighting her experience and training, her career as a program specialist, and her extensive credentials in various aspects of FEMA procedural work. Henry's qualifications have no bearing on the admissibility of her testimony as a lay witness, as Rule 701 "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed. R. Evid. 701 advisory committee's note. Henry's

introductory statements regarding her experience and training were used to establish her personal knowledge of the FEMA policies and procedures about which she later testified, and personal knowledge is a mandatory underpinning of lay witness testimony. *See Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 550 (5th Cir. 2005). Breland here challenges the descriptive testimony about Henry's experience and training, not Henry's opinions based thereon. Henry's introductory statements about her training and experience did not automatically convert her testimony into expert testimony.

Second, Breland contends that the court erred by admitting Henry's testimony regarding the definition of "primary residence"—a mandatory requirement for disaster relief assistance defined in the Code of Federal Regulations. On direct examination, the Government asked Henry for "FEMA's definition" of the term "primary residence." Henry responded that "the CFR states that a primary residence is where a person resides for a majority of the year." Breland's counsel made no objection to this statement. Later, on cross-examination, Henry gave conflicting definitions of the term "primary residence." Breland's counsel pressed Henry further, posing various hypothetical questions about whether certain persons could qualify for FEMA assistance when—for various reasons—they were not actually occupying the home. Breland's counsel also elicited testimony from Henry stating that "[m]ost people would assume primary residence is where you live." These responses, elicited on cross-examination, more closely fit the definition of expert testimony than her direct-examination testimony.[1] Therefore, on this record, Breland has failed to

---

[1] Had Breland's counsel made proper objections to the disputed testimony and been overruled, the ruling would then be treated as "the law of the case"—allowing Breland to repeat and rebut the objectionable testimony while still preserving error. *United States v. Marshall*, 762 F.2d 419, 425 (5th Cir. 1985). No such ruling was obtained, so the further development of any impermissible expert testimony on cross-examination invited error into the proceeding. "[W]here the injection of allegedly inadmissible evidence is attributable to the action of the defense," as it was in this case, "its introduction does not constitute reversible

No. 09-60040

demonstrate that the admission of Henry's response constituted clear error on the part of the court.

Breland's argument fails for yet another reason. The FEMA "Help After a Disaster" Guide, which was provided to all FEMA Hurricane Katrina relief applicants, was admitted into evidence as Government Exhibit Four. The Guide contained a detailed list of eligibility requirements for FEMA assistance. Although the Guide did not mention "primary residence" by name, the Guide required that the applicant's home in the disaster area be that home in which the applicant "usually live[s] and where [the applicant was] living at the time of the disaster." Because Henry's testimony was cumulative of other admitted evidence, he cannot show that the admission of this testimony constituted plain error.

### III.

Breland also contends that his Sixth Amendment right of confrontation was violated where the district court permitted the introduction of his FEMA file without requiring the Government to produce the FEMA representative who took his application over the phone. The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. Alleged violations of the Confrontation Clause of the Sixth Amendment are "reviewed *de novo*, but are subject to a harmless error analysis." *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004).

The Confrontation Clause of the Sixth Amendment excludes "testimonial" out of court statements except where the witness is unavailable and the defendant has had a prior opportunity to cross examine the witness. *Crawford*

---

error." *United States v. Martinez,* 604 F.2d 361, 366 (5th Cir.1979) (citations omitted); *see also United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009) (finding no reversible error where the "testimony elicited by the defense is closer to expert testimony than is the testimony of which it complains").

No. 09-60040

*v. Washington*, 541 U.S. 36, 59 (2004). The Supreme Court has declared that a statement is "testimonial" when it was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52 (citation omitted). The Government here argues that presenting the FEMA representative who took Breland's application was unnecessary because the application was a business record. Business records are "generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539–40 (2009).

The Government contends that Breland's application was a typical non-testimonial business record within the description set out in *Melendez-Diaz*. Breland argues that the records are testimonial, and thus trigger the right to confrontation, because they would "lead an objective witness reasonably to believe that the statement would be available for use at later trial" because telephone applicants were warned that providing false information could trigger consequences. Specifically, Breland alleges that FEMA's "Help After a Disaster" Guide, which was provided to all applicants, warned that statements made in the application could be used in a later trial against the applicant.[2] The FEMA records, although they do contain warnings pertaining to the applicant's duty to tell the truth, were business records created for the purpose of administering federal disaster benefits swiftly and efficiently to those victims of Hurricane Katrina who were eligible to receive assistance. The records are similar to the

---

[2] The Declaration and Release form in the Guide required applicants to certify that "I understand that, if I intentionally make false statements or conceal any information in an attempt to obtain disaster aid, it is a violation of federal and state laws, which carry severe criminal and civil penalties." The form also informed applicants that information they provided to FEMA could be given "to law enforcement agencies . . . where there may be a violation or potential violation of the law."

10

No. 09-60040

American Red Cross application in *United States v. Beets*.[3] 242 F. App'x 968, 970 (5th Cir. 2007) (unpublished). In *Beets*, a case in which the defendant was charged with fraudulently obtaining Red Cross benefits, we found no error where the Government moved to admit the defendant's Red Cross application without the accompanying testimony of an American Red Cross employee. *Id*. Because the Government was not proffering testimonial hearsay statements by the non-testifying witness, the court found no Confrontation Clause violation where the application was admitted as a business record. *Id*. The Government did not offer any hearsay statements from the intake representative in the instant case, so we find no error in admitting the file without the testimony of the intake representative.

Even if the information in Breland's application could be considered testimonial in nature, any error in failing to permit him to confront the intake representative was harmless. Breland does not dispute the accuracy of the information recorded by the FEMA intake representative, specifically that Breland claimed to live at 4096 Olga Drive. Breland never argues that the intake representative lied about this information, nor does he claim that this statement was somehow recorded in error. Instead, Breland disputed at trial only FEMA's conclusion that 4096 Olga Drive was Breland's "primary residence." Breland never claims to have made any statement regarding "primary residence" to the representative who took his application information over the phone. Rather, both parties agree that this conclusion was drawn from Breland's statement that he lived at the address — a statement he does not deny making — along with other information provided in the application. Breland has demonstrated no injury from being denied the opportunity to confront the intake representative, so assuming *arguendo* that the district court erred, that error was harmless.

---

[3] Although *Beets* is an unpublished opinion which is not binding on this court, it is persuasive authority and we adopt its reasoning. *See* 5th Cir. R. 47.5.4.

No. 09-60040

## IV.

Breland argues that the district court erred in denying his Rule 29 motion for judgment of acquittal, in which he argued that the evidence was factually insufficient to support his conviction. In reviewing the sufficiency of the evidence, we must "view the evidence and inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007) (citations omitted). Breland contends that Henry's inappropriate and conflicting testimony was the only testimony offered to prove the definition of "primary residence," and that Henry's conflicting definitions left the term in such a "state of uncertainty" that "it was impossible for the jury to find that Mr. Breland acted with *mens rea* when he committed the alleged fraud." To the extent that the definition of primary residence was relevant to the jury's verdict,[4] assuming *arguendo* that Breland's contentions about the testimonial definition of "primary residence" are correct, we find that the listed eligibility requirements contained in FEMA's "Help After a Disaster" Guide admitted as Government Exhibit Four were sufficient to support the conviction.

## CONCLUSION

Because Breland has not succeeded in making the showings necessary to disturb the district court's judgment, the judgment of the district court is AFFIRMED.

---

[4] A finding of "primary residence" may have been a definitive element in FEMA's own determination of who was qualified to receive benefits, but the definition of "primary residence" was irrelevant to all but one of the counts upon which the defendant was convicted. The sole exception was the count involving theft of government funds of more than $1,000, and there was sufficient evidence apart from Henry's testimony to convict on this count.