# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20736

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

LISA YVETTE COFFMAN,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The defendant was indicted for making false statements to obtain federal workers' compensation benefits under 18 U.S.C. § 1920 and for theft of public money under 18 U.S.C. § 641. A jury convicted her on both counts. On appeal, she argues that she was prejudiced by inadmissible testimony and a flawed jury instruction. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Lisa Yvette Coffman was a mail carrier for the United States Postal Service. In 2011, she injured her back while lifting a package, and she applied for workers' compensation benefits, including travel reimbursement for her

No. 18-20736

mileage to and from doctor appointments related to her injury. Between November 2011 and May 2016, Coffman submitted travel reimbursement forms for over 95,000 miles. She received more than $48,000 for travel reimbursement — over $46,000 of overpayment.

Coffman claimed travel reimbursement for nonexistent doctor appointments and for treatment unrelated to her covered back injury. For example, she sought travel reimbursement for 190 appointments with Dr. Tri Le — who was not an approved workers' compensation provider — when she in fact had only 31 appointments with that doctor. Coffman also told an investigator that Coffman paid Dr. Le through private insurance, implying Coffman knew that Dr. Le was not an approved provider.

In one 122-day period in 2016, Coffman sought travel reimbursement for 327 appointments. She submitted claims for four and five appointments on many days, and sometimes she claimed to have visited the same office twice on a single date. Coffman also sought travel reimbursement for weekend appointments when the doctors' offices were closed. On a single day in 2016, Coffman claimed to have driven nearly 400 miles to five different doctors. Four of those doctors or their representatives testified that Coffman either had no appointment that day or did not show up for her appointment.

On October 11, 2016, Coffman was charged with one count of making false statements to obtain federal workers' compensation benefits and one count of theft of public money. At trial, Coffman conceded that she had submitted improper claims, but she argued that she lacked criminal intent. She presented evidence showing that she was heavily medicated with a combination of pain pills, muscle relaxers, and sleeping pills that could cause confusion, hallucinations, memory loss, and the inability to focus.

No. 18-20736

A jury found Coffman guilty on both counts. The district court sentenced her to five years of probation and ordered her to pay $46,310.77 in restitution. Coffman timely appealed.


DISCUSSION

On appeal, Coffman challenges a portion of trial testimony from Dr. Jennifer Johnson-Caldwell, who was one of Coffman's treating physicians. Coffman also argues that the district court failed to instruct members of the jury that they must unanimously agree on the basis of the verdict — whether Coffman committed theft of public funds by embezzlement *or* by stealing. We begin with the claim of evidentiary error.


I.    *Admissibility of testimony*

At trial, the Government asked its witness, Johnson-Caldwell, a doctor who treated Coffman for her back injury, to explain why the doctor no longer takes workers' compensation cases. She answered, "In the process of doing these cases, I discovered that people aren't the most honest people, and it just was a little unsettling for me to be doing things that I didn't agree with, and so I just completely stopped." Coffman did not object to the testimony. The Government asked a follow-up question: "Did you have that feeling about Ms. Coffman?" Coffman objected, and the district court sustained the objection. Coffman now contends that Johnson-Caldwell's first remark about the honesty of workers' compensation patients was inadmissible. Coffman asserts that the testimony was irrelevant, unfairly prejudicial, improper expert profile evidence, and an impermissible opinion on the ultimate issue (whether Coffman had the requisite criminal intent).

"Generally, we review a trial court's decision to admit evidence for abuse of discretion." *United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005). Our

review here, though, is for plain error because Coffman did not object to the now-challenged testimony at trial. *See United States v. Espino-Rangel*, 500 F.3d 398, 399 (5th Cir. 2007). There are four steps to our plain-error analysis: whether (1) an error that was (2) clear or obvious (3) affects the defendant's substantial rights, and if there was such an error, we have discretion to remedy (4) if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 734 (1993) (quotation marks omitted).

Acknowledging that the challenged remark was of little relevance, we assume without deciding that it was a clear error to admit the testimony about the general honesty of workers' compensation patients.[1]

Now we ask whether Coffman's substantial rights were affected. "To satisfy [the] third condition, the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (quotation marks omitted). An error generally affects a defendant's substantial rights if the error was prejudicial. *Olano*, 507 U.S. at 734.

Guilt-by-association evidence is "highly prejudicial." *United States v. Polasek*, 162 F.3d 878, 887 (5th Cir. 1998). In addressing harmlessness, we stated that "[o]ne relevant consideration, of course, is the amount of time spent" on the evidence. *Id.* Here, the challenged testimony was similar to guilt-by-association evidence, offering a negative opinion about a group to

---

[1] We are also unpersuaded by Coffman's other arguments about the admissibility of Johnson-Caldwell's statement. Johnson-Caldwell's testimony was based on her personal experience treating workers' compensation patients, so she did not provide improper expert profile evidence. *See United States v. Breland*, 366 F. App'x 548, 552 (5th Cir. 2010). Similarly, Johnson-Caldwell's testimony did not give an opinion on the ultimate legal issue — whether Coffman had the intent to commit theft of public funds — and instead described her own impressions about the honesty of workers' compensation patients more generally. *See United States v. Montes-Salas*, 669 F.3d 240, 250 (5th Cir. 2012).

which Coffman belonged.  The bigger picture, though, reveals that the isolated remark was just that.  The challenged testimony was just a single sentence. The Government did not even mention it during closing argument.  *See United States v. Ricardo*, 472 F.3d 277, 285 (5th Cir. 2006).

In addition, a different witness, whose testimony is not challenged on appeal, testified that the workers' compensation office originally started reviewing travel-benefits applications for 100-plus mile trips "because people haven't been as honest as they should."  This comment may not be as prejudicial as the challenged testimony, but it is similar, generalizing about the honesty of workers' compensation patients.  Even without hearing Johnson-Caldwell's comment on the honesty of workers' compensation patients, the jury still would have heard a similar sentiment.  We therefore are unable to conclude that but for the challenged testimony, the outcome of the proceeding would have been different.  *United States v. Holmes*, 406 F.3d 337, 365 (5th Cir. 2005).

II.    *Non-unanimous jury verdict under 18 U.S.C. § 641*

Coffman was convicted on Count Two under Section 641, which provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--

commits theft of public funds.  18 U.S.C. § 641.  Coffman was charged under paragraph one.  The district court instructed the jury that the Government had to prove beyond reasonable doubt that Coffman "embezzled, stole, or knowingly

converted such money to her own use." The district court also told the jury that its verdict needed to be unanimous. On appeal, Coffman challenges the jury instruction for this count, contending the district court erred by failing to instruct the jury that it must unanimously agree whether she engaged in embezzling or stealing. She argues that embezzlement and stealing are different crimes, meaning jurors had to agree on which offense Coffman committed.

Our review, again, is for plain error because Coffman did not object to the jury charge in the district court. *United States v. Creech*, 408 F.3d 264, 267–68 (5th Cir. 2005). "Jury instruction error does not amount to plain error unless it could have meant the difference between acquittal and conviction." *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018) (quotation marks omitted).

The Constitution requires that jurors unanimously agree that the Government proved all the elements of an offense. *Richardson v. United States*, 526 U.S. 813, 816–17 (1999). The jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* at 817. "The crucial distinction is thus between a fact that is an element of a crime and one that is but the means to the commission of an element." *United States v. Talbert*, 501 F.3d 449, 451 (5th Cir. 2007) (quoting *United States v. Verrecchia*, 196 F.3d 294, 299 (1st Cir. 1999)). Whether a fact constitutes an element or an alternative means of committing an offense is a "value choice[] more appropriately made in the first instance by a legislature than by a court." *Schad v. Arizona*, 501 U.S. 624, 638 (1991) (plurality opinion).

We faced a similar question in *Fairley*. There, we considered whether the verbs in the first paragraph of Section 641 were interchangeable with those

in the second paragraph. 880 F.3d at 208–10. The indictment and jury charge combined acts from Section 641's first and second paragraphs, alleging that the defendant "received, retained, concealed, or converted" government property. *Id.* at 209. We explained that "the verbs animating [Section] 641's first two paragraphs are not fungible." *Id.* at 205. "The verbs in paragraph one — embezzle, steal, purloin, and convert — describe takings or possessions that are fraudulent or otherwise illegal," while "[p]aragraph two's verbs — receive, conceal, and retain — are broader, and cover innocent as well as illicit acts." *Id.* Thus, Section 641 "criminalizes two distinct acts": "paragraph one covers stealing from the United States and paragraph two covers knowingly receiving stolen United States property." *Id.* at 204. Because the jury instruction conflated the elements of the two paragraphs, we vacated the defendant's conviction under Section 641. *Id.* at 212. Although *Fairley* characterized Section 641's first paragraph as having three elements, *id.* at 209, the court did not resolve the issue of whether the verbs in each paragraph were elements or mere means.

When analyzing whether a requirement is an element of a statute, we consider the statute's language, structure and history, and the fairness to the defendant. *Talbert*, 501 F.3d at 451. Courts traditionally "require[e] juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law." *Richardson*, 526 U.S. at 819. The Court provided a hypothetical that helps in understanding these principles:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement — a disagreement about means — would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Id.* at 817. "Force" and "threat of force" are alternatives, and jurors could decide on either — the elements of the crime are met either way. *Id.* In *Richardson*, though, the statute applied where a defendant committed a "series of violations." *Id.* at 815. The "violations" were separate elements because the government needed to prove the defendant committed a series of discrete violations. *See id.* at 818–20. Otherwise, unfairness could have resulted because the jury would not need to discuss whether each alleged violation was in fact a violation. *Id.* at 819.

The first paragraph of Section 641 provides that "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States" commits theft of public money. 18 U.S.C. § 641. The statutory language does not specify whether the verbs in the first paragraph constitute elements or means of committing the offense. *See id.* The verbs have similar meanings, but they are not the same. Coffman notes that the Supreme Court long ago observed a difference between embezzlement and larceny. *Moore v. United States*, 160 U.S. 268, 269–70 (1895). The question before us, though, "is one of statutory construction, not of common law distinctions." *Milanovich v. United States*, 365 U.S. 551, 554 (1961) (analyzing Section 641).

The first and second paragraphs of Section 641 list different kinds of acts and thus different crimes. *Fairley*, 880 F.3d at 205. That structural point helps the Government; there are two separate crimes, not seven in the first paragraph alone. The verbs in paragraph one of Section 641 are also listed as alternatives. Indeed, the earliest Supreme Court case discussing the first paragraph of Section 641 treated the larceny-like crimes together, holding a showing of intent was required:

> We find no other purpose in the 1948 re-enactment than to collect from scattered sources crimes so kindred as to belong in one category. . . .
>
> . . . .
>
> It is not surprising if there is considerable overlapping in the embezzlement, stealing, purloining and knowing conversion grouped in this statute. What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches.

*Morissette v. United States*, 342 U.S. 246, 266–67, 271 (1952).

The alternative verbs in the first paragraph of Section 641 are means of committing the offense, not elements. Therefore, the district court's jury instruction was not erroneous.

AFFIRMED.