# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2020

Lyle W. Cayce
Clerk

No. 17-11212

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JEFFREY NDUNGI SILA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-448-1

Before HIGGINBOTHAM, ELROD, and HAYNES, *Circuit Judges*.

JENNIFER WALKER ELROD, *Circuit Judge*:

A jury convicted Jeffrey Sila of theft of public funds and aggravated identity theft. On appeal, he contends that the district court erred by failing to give the jury a "unanimity of theory" instruction on Counts I and II of his indictment, that there was insufficient evidence to convict him on Count III, and that his sentence was incorrect. We AFFIRM the judgment of the district court with respect to Counts I and II, VACATE Sila's conviction on Count III, and REMAND the case for re-sentencing.

I.

In 2016, the Internal Revenue Service began investigating a scheme involving stolen tax refund checks. The IRS believed the scheme was being run out of Kenya and suspected Lydia Breaux of acting as a stateside operative. Breaux soon confided in an undercover IRS agent that Jeffrey Sila—already a suspect in the investigation—had entered the United States from Kenya with a large tax refund check in need of cashing. The trio (the IRS agent, Breaux, and Sila) met in a Dallas, Texas restaurant to negotiate the purchase of the tax refund check by the IRS agent. At this meeting, Sila showed the agent a picture of the check, made out to a long-deceased individual named Cynthia Short. Sila also assured the agent that he could get him a fake driver's license in Short's name.

Negotiations continued over the course of a week until the trio met up again to close the deal on August 9, 2016. The IRS agent purchased the check. A few days later, Sila made good on his promise and e-mailed the agent a fake driver's license in Short's name. Further investigation revealed that other fraudulent tax refunds had been issued to a bank account linked to Breaux. One such refund, under the name Dietrich Eipper, was filed with an IP address associated with Sila.

Sila was arrested and charged with two counts of theft of public funds in violation of 18 U.S.C. §§ 2 and 641, based on two fraudulent tax refunds: one in Short's name (Count I) and one in Eipper's name (Count III).[1] Sila was also charged with aggravated identity theft in violation of 18 U.S.C. §§ 2 and 1028A (Count II), based on the use of Short's identity to accomplish the

---

[1] The pertinent portion of 18 U.S.C. § 641 prohibits embezzling, stealing, purloining, or knowingly converting any "record, voucher, money, or thing of value of the United States or of any department or agency thereof." Title 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets . . . or procures its commission, is punishable as a principal."

Count I offense. A federal jury convicted Sila on all three counts and the district court subsequently sentenced him. Sila timely appealed.

## II.

Sila raises three arguments: (A) that the district court erred by failing to give the jury a "unanimity of theory" instruction on Counts I and II, (B) that there was insufficient evidence to convict him of theft of public funds on Count III (the Eipper tax refund), and (C) that his sentence should be vacated for erroneous loss attribution. We address each of these arguments in turn.

## A.

Sila first argues that the district court should have given the jury a unanimity of theory instruction. We review a district court's jury instructions for abuse of discretion. *United States v. Hernandez*, 92 F.3d 309, 311 (5th Cir. 1996). We "will not reverse if the court's charge, viewed in its entirety, is a correct statement of the law which clearly instructs jurors as to the relevant principles of law." *Id.* In a federal criminal case, a jury "cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999). In general, however, "the jury need not agree as to mere means of satisfying the *actus reus* element of an offense." *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality opinion). Thus, "[i]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States v. Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991) (quoting *United States v. Beros*, 833 F.2d 455, 460 (3d Cir. 1987)).

But an exception to the general rule arises when the "differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses." *Schad*, 501 U.S.

at 633 (plurality opinion). Where the exception applies, a general unanimity "instruction will be inadequate to protect the defendant's constitutional right to a unanimous verdict" because "there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *Holley*, 942 F.2d at 926 (internal quotation marks omitted) (quoting *United States v. Duncan*, 850 F.2d 1104, 1114 (6th Cir. 1988) (overruled on other grounds by *Schad*, 501 U.S. at 634)).

Sila asserts that his right to a unanimous jury verdict was violated by the district court's failure to give a "unanimity of theory" instruction to the jury on Count I (the Short tax refund). The district court's instruction did not address two aspects of unanimity that Sila wanted it to require: unanimity with respect to the location of the crime and unanimity with respect to the possible distinctions between "stealing" and "conversion" in § 641.[2] Instead, the district court gave a general unanimity instruction: "[t]o reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the second superseding indictment." Sila argues that a general unanimity instruction was inadequate to protect his constitutional rights. *See Holley*, 942 F.2d at 926.

Relying on *Schad*, Sila first argues that "[m]isappropriating the check in Kenya would constitute one offense; converting the check to cash through

---

[2] During the charge conference at trial, Sila's counsel proposed some language that would have distinguished between stealing and converting in § 641, but did not offer any language or suggest any corrections to the district court's charge relating to the location (Dallas or Kenya) of the Count I offense. It is therefore doubtful that Sila's jury-charge argument with respect to the location of the crime was properly preserved on appeal. *See United States v. Bennett*, 874 F.3d 236, 243 (5th Cir. 2017) (noting that a district court errs in rejecting a requested jury instruction if the instruction is "substantively correct", is "not substantially covered in the charge given to the jury", and "concerns an important point in the trial.").

a sale in Dallas would constitute another." He says that, because the Government proved that the Short tax refund was filed in Kenya in April 2015 (the Government did not prove who filed it) and proved that the check was sold in Dallas in August 2016, the conduct in each location must be treated as separate offenses and the jury should have been instructed accordingly. Sila says that the Government advanced both theories at trial and notes several instances when the Government mentioned Sila's conduct in Kenya.

To support this argument that the jury needed to be instructed that it must be unanimous as to whether the conduct in Kenya or Dallas formed the basis for Count I, Sila relies on *Holley*, 942 F.2d 916. In *Holley*, the defendant was charged with two counts of perjury and each count alleged multiple perjurious statements. *Id.* at 927. He argued on appeal that a unanimity instruction was necessary to ensure that the jury was unanimous as to at least one statement alleged in each of the two counts. *Id.* at 925. We agreed and determined that a unanimity of theory instruction was required because each count of the indictment "allege[d] multiple false statements" and "[t]he [G]overnment was required to prove dissimilar facts to show the knowing falsity of each statement." *Id.* at 928. Without a unanimity of theory instruction, there was "a reasonable possibility that the jury was not unanimous with respect to at least one statement in each count." *Id.* at 929.

The Government does not dispute that Sila's conduct in Dallas and his conduct in Kenya could have theoretically constituted two separate violations of § 641. Rather, the Government maintains that it sought to convict Sila on Count I based only on his conduct in Dallas. Therefore, the Government argues, the district court did not err in failing to give a unanimity of theory instruction as to the location of the crime.

Sila is correct that, *if* the Government had alleged he violated § 641 in Kenya and/or in Dallas, then a unanimity of theory instruction consistent with *Holley* would have been required. But the United States did not allege two offenses in two locations, or even that one offense occurred across two locations. The indictment is instead based solely on the August 9, 2016 Dallas transaction—made over a year after the fraudulent tax refund in Short's name was filed in Kenya. The indictment alleged that the crime occurred on or about August 9, 2016 "in the Dallas Division of the Northern District of Texas," not in Kenya. Plus, the facts alleged in Count I correspond to the August 9, 2016 transaction, and cannot be reasonably construed to relate to any conduct performed at a much earlier date on a different continent. Unlike the indictment in *Holley*, Count I of Sila's indictment does not allege "multiple" offenses or "embrace[] two or more separate offenses, though each be a violation of the same statute." *Holley*, 942 F.2d. at 927.

The record also fails to vindicate Sila's portrayal of the trial and his argument that the jury could have been confused. *See id.* at 926. He cites the Government's closing argument, where the prosecutor said: "When did the theft occur? Well, the indictment alleges August the 9th. That's the day he was in possession of [the Short tax refund]. He had brought it from Kenya, he had the intent to sell it and convert it to cash. That's stealing. That's conversion." Far from proving that the Government charged Sila for his conduct in Kenya, this quote bolsters the Government's argument that "the theft occurred . . . on August the 9th"—when Sila was in Dallas, not Kenya. He notes another moment from the Government's closing argument: "And where did Mr. Sila come from to come to the United States with that check? It was Kenya." Context is key. In this portion of its closing argument, the United States was not emphasizing the fact that Sila traveled to the United States from Kenya, but rather that Sila's coming from Kenya was further

evidence that he was associated with the Kenyan IP address used to file the Short tax refund. None of the quotes to which Sila directed us show that the Count I offense was based on conduct in Kenya as opposed to conduct in Dallas.

Sila alternatively says he could have been convicted of violating 18 U.S.C. § 641 by either "steal[ing]" or "convert[ing]" public funds, and that the statute's different verbs create two different offenses. Thus, Sila says, the jury should have been instructed as to which offense—stealing or converting—the Government had accused him of committing. Sila's argument is foreclosed by our recent holding in *United States v. Coffman*, 969 F.3d 186 (5th Cir. 2020). In *Coffman*, as here, the defendant was convicted of violating the first paragraph of § 641 and argued on appeal that the district court erred by failing to give a special unanimity instruction addressing the different verbs of § 641. *Id.* at 190. We looked to the Supreme Court's decision in *Morissette v. United States*, 342 U.S. 246 (1952), where the Court treated the verbs of § 641's first paragraph "together":

> We find no other purpose [in § 641] than to collect from scattered sources crimes so kindred as to belong in one category . . . . It is not surprising if there is considerable overlapping in the embezzlement, stealing, purloining and knowing conversion grouped in this statute. What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches.

*Coffman*, 969 F.3d at 192 (quoting *Morissette*, 342 U.S. at 266–67).

Rejecting Coffman's argument that § 641's first paragraph listed distinct elements, we held that "[t]he alternative verbs in the first paragraph of Section 641 are means of committing the offense, not elements." *Id.* In other words, stealing or converting public funds are different means of violating § 641, but § 641 is violated all the same, and the Government need

not separately prove that a defendant either stole or converted public funds. *See also Schad*, 501 U.S. at 649 (Scalia, J., concurring in part) ("[W]hen a single crime can be committed in various ways, jurors need not agree upon the mode of commission."). We therefore affirm Sila's convictions on Counts I and II.

## B.

Next, Sila argues that there was insufficient evidence to convict him on Count III. Count III of the indictment charged Sila with aiding and abetting a violation of § 641 by participating in the filing of a fraudulent tax return in the name of Dietrich Eipper. On appeal, Sila does not dispute that such an act could serve as a basis for conviction, nor does he dispute the validity of any of the record evidence. Instead, he argues that no rational juror could have concluded on the evidence presented that he filed or aided and abetted in filing the Eipper tax refund.

"[T]he standard of review is whether the evidence, as viewed in the light most favorable to the verdict, would permit a rational trier of fact to find [the defendant] guilty beyond a reasonable doubt." *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999) (quoting *United States v. Pankhurst*, 118 F.3d 345, 352 (5th Cir. 1997)). The evidence is insufficient only when, taking all inferences in favor of the verdict, "no rational juror could have found guilt beyond a reasonable doubt." *United States v. Hoffman*, 901 F.3d 523, 541 (5th Cir. 2018) (quoting *United States v. Sanjar*, 876 F.3d 725, 744 (5th Cir. 2017)). We "consider countervailing evidence as well as the evidence that supports the verdict." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999) (quoting *United States v. Giraldi*, 86 F.3d 1368, 1372 (5th Cir. 1996)).

At trial, the Government offered the following evidence in support of the Count III charge: After the undercover IRS agent met with Breaux and Sila in Dallas and purchased the refund check in Short's name, further

investigation revealed that Breaux was connected to several other fraudulent tax refunds. One of these was the Eipper tax refund. This refund had been filed from a Kenyan IP address ending in 139 (the "139 IP address"), and this IP address was assigned to a company called Enterprise ICT. (Enterprise ICT was also assigned to another IP address, the one used to file the Short tax refund in Count I). Sila used Enterprise ICT's mailing address as the "home" address on one of his PayPal accounts. Between 2011 and 2016, PayPal accounts in Sila's name had used the 139 IP address almost 1,000 times. After the Eipper tax refund issued to Breaux's bank account, she wired $9,000 to Sila's brother, Edwin. In addition to this evidence, the United States argued that Sila's connections with Breaux and Edwin on both the Short tax refund and the Eipper tax refund evinced an overlay of participants between the crimes.[3]

On appeal, Sila argues that there is no way to know whether any of the logins to his PayPal accounts from the 139 IP address were actually him or were instead someone else with his login information. He stresses that the 139 IP address was assigned to a business, Enterprise ICT, and that any number of people—most importantly, his brother Edwin—could have been using the 139 IP address to log into Sila's PayPal accounts. He notes that his PayPal accounts were logged into several times after he was taken into custody. He also argues that, because the mailing address assigned to Enterprise ICT and one of Sila's PayPal accounts was located in a Nairobi mall, it is possible that the mailing address "was a central depository for mail for every business at the mall." Sila contends that the Government offered no evidence that he otherwise used the 139 IP address on the day the Eipper

---

[3] In his brief, Sila argued for the first time that such overlay-of-participant evidence was inadmissible under Federal Rule of Evidence 404(b) and our decision in *Guerrero*, 169 F.3d at 939. Because we hold the evidence insufficient on Count III regardless of whether overlay-of-participant evidence was properly admitted, we do not address this argument.

tax refund was filed with that IP address. Finally, he notes that the Government said in its closing argument at trial that Enterprise ICT was his brother's business, not his.

Drawing "all reasonable inferences in support of the verdict," we hold that the evidence was insufficient to support Sila's Count III conviction. The Government presented no conclusive evidence showing that Sila had ever used the 139 IP address, much less that he used it to file (or help file) the Eipper tax refund. All circumstantial evidence supporting the Government's contention that Sila used the 139 IP address many times is severely undercut by the fact that anyone associated with Enterprise ICT and logged into their system could have used it. Moreover, that Sila's PayPal was accessed after he was taken into custody substantially weakens the Government's argument that he was the exclusive user of his PayPal accounts and therefore was the only person using the 139 IP address to log into his PayPal accounts almost 1,000 times between 2011 and 2016. We therefore vacate Sila's Count III conviction.

## C.

Finally, Sila argues that the district court attributed an erroneous amount of loss to him and thereby improperly sentenced him. Specifically, Sila says that the district court clearly erred in attributing $3.9 million of loss to him based on the IP address ending in 154 used for Counts I and II. Because there will be a re-sentencing here,[4] we need not address Sila's argument about the reliability of the assertions in the Presentence Report and whether those assertions support the district court's attributing to Sila *all*

---

[4] At oral argument, the United States conceded that a reversal of Sila's Count III conviction would require re-sentencing.

fraudulent tax refunds filed from the 154 IP address from 2011 to 2016 in its calculation of a proper sentence on Counts I and II.

\* \* \*

The judgment of the district court is AFFIRMED on Counts I and II and VACATED with respect to Count III. The case is REMANDED for re-sentencing.