REVISED

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2020

Lyle W. Cayce
Clerk

No. 17-30351

Kuantau Reeder,

*Petitioner—Appellant*,

*versus*

Darrel Vannoy, Warden, Louisiana State Penitentiary,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-6493

Before King, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:

Petitioner-appellant Kuantau Reeder was convicted by a Louisiana jury of second-degree murder in connection with the death of Mark Broxton. *State v. Reeder*, 698 So. 2d 56, 57 (La. Ct. App. 1997). After being denied postconviction relief by the state courts, Reeder filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Reeder argues under *Brady v. Maryland*, 373 U.S. 83 (1963), that the prosecution unlawfully withheld impeachment evidence concerning eyewitness Earl Price's prior federal conviction for lying on a firearms application. The district court denied

No. 17-30351

Reeder's petition. We granted a certificate of appealability and now we AFFIRM.

## I.

### A. Factual Background & Conviction

On April 13, 1993, Mark Broxton was shot multiple times while standing outside a grocery store. *Reeder*, 698 So. 2d at 57. Law enforcement determined that Earl Price and Norma Varist witnessed the shooting. *Id.* at 58.[1] Price subsequently identified Reeder as the shooter in a photo lineup. *Id.* Reeder was indicted for the second-degree murder of Broxton on October 7, 1993. *Id.* at 57. Reeder's first trial resulted in a hung jury, but he was convicted in his second trial and sentenced to life without parole. *Id.*

Price was the only eyewitness to the shooting who testified at Reeder's trial.[2] Price stated that, from across the street, he saw Broxton talking on the phone outside the grocery store. He testified that a black Camaro pulled up next to Broxton, and a passenger wearing a "blue-and-red looking windbreaker" exited the car and approached Broxton. Price identified this man as Reeder.

Price said he witnessed an argument between Broxton and Reeder, which culminated in Reeder shooting Broxton. Price then observed Broxton run into the store. Price testified that he also entered the store and saw Broxton at the cash register paying for a cold drink before collapsing on the

---

[1] In reviewing Reeder's conviction, the Louisiana Fourth Circuit Court of Appeal's opinion refers to "Earl Pierce" as an eyewitness to the shooting. *See Reeder*, 698 So. 2d at 58. However, the trial transcript refers to "Earl Price."

[2] Varist refused to testify and was held in contempt of court.

No. 17-30351

floor.[3] Price claimed to have caught Broxton before he hit the floor and told people in the store to call the police. Price said he left the store and waited nearby after seeing police arrive.

Once outside, Price said that he saw Reeder "come out from behind" the store with his windbreaker over his head, and that Reeder subsequently threw the windbreaker into a dumpster.[4] Though Price described the windbreaker as blue and red, Sergeant Westley Morris said that another witness, Ella Fletcher, thought it was a "blue and black jacket." A jacket was retrieved from a nearby dumpster the day of the shooting, but the trial transcript does not disclose the color.

Reeder attempted to impeach Price during cross-examination in two ways. First, Reeder questioned Price about his criminal history. Price admitted that he had been convicted for "[a]ssault and battery, intent to kill with a .12-gauge shotgun," but he falsely denied having other convictions. Second, Reeder identified inconsistencies between Price's testimony and his earlier statements. For example, while Price testified at the second trial that Reeder arrived at the grocery store in a black Camaro with chrome wheels, Price admitted that (1) he had previously testified, at the first trial, that he did not remember how Reeder arrived at the grocery store and (2) his statement to the police, on the day of the shooting, did not mention that Reeder arrived in a car.

---

[3] The store's cashier testified that he did not remember seeing Price in the store and that, if he had been inside, he must have entered before Broxton because the door was locked after Broxton entered. *Reeder*, 698 So. 2d at 59.

[4] Though Price testified that he left the store after police arrived, he also stated that he saw Reeder leave the scene before police arrived. *See Reeder*, 698 So. 2d at 58.

No. 17-30351

Reeder was convicted on July 13, 1995. Reeder appealed his conviction, and the Louisiana Fourth Circuit Court of Appeal affirmed the conviction. *See Reeder*, 698 So. 2d at 63.

## B. State Postconviction Relief

Reeder filed his first state-court petition for postconviction relief in 2000. That petition was denied in 2003—as were Reeder's writ applications to the Louisiana Fourth Circuit Court of Appeal and Louisiana Supreme Court.

Reeder filed a second petition for postconviction relief in 2009, asserting that the prosecution unlawfully withheld impeachment evidence related to Price's criminal history and failed to correct his perjured testimony. In response to a pretrial motion requesting the criminal histories of the prosecution's witnesses, the State had only disclosed Price's state convictions: a 1968 assault and battery conviction in Mississippi, a 1975 armed robbery conviction in Mississippi, a 1977 conviction in Alabama for being a felon with a firearm, and a 1982 burglary conviction in Mississippi. However, the State did not disclose Price's 1973 federal convictions for lying on a firearms application and for being a convicted felon in possession of a firearm. The State also failed to correct Price's testimony during the trial that he had only been convicted of the assault and battery.

The state district court denied Reeder's motion for postconviction relief and determined that he "fail[ed] to meet those standards as set out [in *Brady v. Maryland*] to overturn the verdict." The Louisiana Fourth Circuit Court of Appeal agreed and denied Reeder's application for postconviction relief. That court held that the nondisclosure of the conviction for lying on a firearms application did not "render[] the jury's verdict suspect." The court reasoned that, while the prosecution did not attempt to correct Price's testimony regarding his prior convictions, Reeder failed to impeach Price

despite knowledge that Price had "other out-of-state convictions." Lastly, since the jury knew of Price's prior conviction for assault and battery with intent to kill, "the omission of the rest of his prior convictions" did not "undermine[] confidence in the jury's verdict." The Louisiana Supreme Court denied Reeder's application for postconviction relief but did not state its reasons. *State v. Reeder*, 107 So. 3d 623 (La. 2013).

## C. Federal Habeas Petition

In 2013, Reeder filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Louisiana. Reeder argued that the prosecution had violated *Brady* by withholding evidence that Price had a federal conviction for lying on a firearms application, and had violated *Napue v. Illinois*, 360 U.S. 264 (1959), by failing to correct Price's false testimony regarding his prior criminal history.

The district court found that Reeder's *Napue* claim was time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The district court further concluded that, under AEDPA, the Louisiana Fourth Circuit Court of Appeal was not unreasonable when it determined that Reeder's *Brady* claim lacked merit. The district court reasoned that the undisclosed conviction was cumulative of Price's other convictions and prior inconsistent statements and that Price's testimony was corroborated by other evidence that tied Reeder to the crime. Reeder now appeals the rejection of his *Brady* claim.

## II.

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Jenkins v.*

No. 17-30351

*Hall*, 910 F.3d 828, 832 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 65 (2019) (quoting *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012)).

Under 28 U.S.C. § 2254(d), a federal court cannot grant relief unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).[5] A state court decision is deemed "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Jenkins*, 910 F.3d at 832 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Id.* (quoting *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012)). Finally, the "state court's findings of fact are entitled to a presumption of correctness" that may be overcome only by "clear and convincing evidence." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005).

When analyzing a state court's decision under § 2254(d)(1), we consider "clearly established Federal law, as determined by the Supreme

---

[5] This analysis is applied to the "last related state-court decision" that provides a "relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In this case, because the Louisiana Supreme Court denied Reeder's appeal without explanation, the relevant decision is the Louisiana Fourth Circuit Court of Appeal's decision. *See Reeder*, 107 So. 3d at 623.

Court of the United States." 28 U.S.C. § 2254(d)(1). Although we may not use this circuit's precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced," we may "look to circuit precedent to ascertain whether [we have] already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

The Supreme Court has made clear that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citations omitted). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). A federal habeas court should "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims" and "give appropriate deference to that decision." *Wilson*, 138 S. Ct. at 1191–92 (citations omitted). Indeed, the Supreme Court has instructed that we are to "determine what arguments or theories supported or . . . could have supported, the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## III.

Reeder contends that the state court's ruling involved an unreasonable application of clearly established federal law. Specifically, he argues that Price's undisclosed federal conviction for lying on a firearms application was material under *Brady*. Reeder also argues that the state court's decision was based on an unreasonable determination of the facts in

light of the evidence presented. We consider each of Reeder's arguments in turn.

## A. State Court's Application of Clearly Established Federal Law

"To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (citation omitted). In this case, the parties only dispute prong three of this analysis—materiality.

"Suppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1263 (2019) (quoting *United States v. Bagley*, 473 U.S. 667, 685 (1985)). "'A reasonable probability of a different result' is one in which the suppressed evidence 'undermines confidence in the outcome of the trial.'" *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)); *see also Kyles*, 514 U.S. at 434 (holding that a petitioner need not show that he "would more likely than not have received a different verdict with the evidence").

In seeking relief under § 2254(d)(1), Reeder argues that the undisclosed conviction was material because it undermined the credibility of the State's sole eyewitness. Relying on the Supreme Court's applications of *Brady* in *Smith v. Cain*, 565 U.S. 73 (2012) and *Wearry v. Cain*, 136 S. Ct. 1002 (2016), Reeder contends that such impeachment evidence is more significant when the State's case rests primarily on a single witness. Reeder also contests the district court's conclusion that the undisclosed conviction was immaterial because Price's testimony was corroborated and because the

conviction was cumulative of other evidence. We consider each of these arguments in turn and reject each.

First, Reeder's comparisons to the Supreme Court decisions in *Smith* and *Wearry* are not persuasive. As the State pointed out at oral argument, the *Wearry* decision was not even issued by the Supreme Court until 2016—almost four years after the state court's decision. As such, *Wearry* was not "clearly established" federal law at the time of the state court opinion. *See Williams*, 529 U.S. at 412 (explaining that "clearly established Federal law" refers to Supreme Court decisions "as of the time of the relevant state-court decision").[6] Regardless, *Wearry* is distinguishable from Reeder's case. In contrast to Price's seventeen-year-old conviction for lying on a firearms application, the multiple pieces of evidence withheld in *Wearry* addressed the key witnesses' motives to lie and directly undermined their testimony. *Wearry*, 136 S. Ct. at 1006–07.[7]

Reeder's reliance on *Smith v. Cain* fares no better, as it too is readily distinguishable. In *Smith*, the witness's "undisclosed statements directly contradict[ed] his testimony." *Smith*, 565 U.S. at 76. While the witness "told the jury that he had '[n]o doubt' that [the defendant] was the gunman he stood 'face to face' with on the night of the crime," undisclosed police files indicated that the witness had also stated "that he 'could not ID anyone because [he] couldn't see faces' and 'would not know them if [he] saw

---

[6] Though this argument regarding *Wearry* was not raised by the State below or in its briefing on appeal, we have held that "a State's lawyers cannot waive or forfeit § 2254(d)'s standard." *Langley v. Prince*, 926 F.3d 145, 162 (5th Cir. 2019).

[7] Reeder's reliance on our decisions in *LaCaze v. La. Corr. Inst. for Women*, 645 F.3d 728 (5th Cir. 2011), and *Tassin v. Cain*, 517 F.3d 770 (5th Cir. 2008), is unavailing for the same reason. In contrast to Reeder's case, the undisclosed evidence in *LaCaze* and *Tassin* revealed assurances given to a witness and agreements entered into by the prosecution with a witness. *See LaCaze*, 645 F.3d at 735–36; *Tassin*, 517 F.3d at 779–80.

them.'" *Id.* (citations omitted). By contrast, the undisclosed evidence of Price's conviction for lying does not "directly contradict" or undermine his assertions at trial. *Id.*

Certainly, undisclosed impeachment evidence is more likely to be considered material where the prosecution's case relies primarily on a single witness. *See id.*; *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility" could justify a new trial under *Brady*) (quoting *Napue*, 360 U.S. at 269). However, unlike the testimony of the witness in *Smith*, Price's testimony was not the "*only* evidence linking [the defendant] to the crime." *Id.* Indeed, Price's testimony identifying Reeder as the shooter was corroborated by other witness accounts. Specifically, Sergeant Morris testified that both Price and Varist identified Reeder as the shooter. Broxton's mother, Mary Menina, also testified that, based on information received from Varist, she believed that Reeder was the shooter. Although some of this corroborating testimony may have qualified as hearsay, no such objections were made at trial. As the Court explained in *Smith*, undisclosed evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith*, 565 U.S. at 76; *see also Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (holding that undisclosed impeachment evidence is not material if the witness's testimony is strongly corroborated). At the very least, "fairminded jurists could disagree" as to whether Price's testimony was sufficiently corroborated to sustain confidence in the verdict. *Woods*, 136 S. Ct. at 1151.

Finally, we agree with the district court's conclusion that Price's undisclosed conviction was cumulative of other evidence disclosed to the defense—including the assault and battery conviction that was revealed to the jury during Price's cross-examination. "Undisclosed evidence that is merely cumulative of other evidence" is not likely to be considered material.

*Rocha*, 619 F.3d at 396–97. Indeed, "[i]f the evidence provides only incremental impeachment value, it does not rise to the level of *Brady* materiality." *Murphy*, 901 F.3d at 598 (quoting *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005)); *see also Banks v. Dretke*, 540 U.S. 668, 702 (2004) (finding that undisclosed impeachment evidence was not rendered "merely cumulative" where witness was impeached on issues unrelated to the undisclosed information). In this case, Price was impeached on not only his prior inconsistent testimony but also his criminal history. Though Price falsely denied having any other convictions beyond the assault and battery, the defense was aware of his other state convictions and failed to impeach that denial. For its part, the state court emphasized that the jury "knew Mr. Price had been convicted of assault and battery with the intent to kill" in holding that the "omission of the rest of his prior convictions" did not "undermine[] confidence in the jury's verdict." Reeder nonetheless argues that the undisclosed conviction for lying, as a *crimen falsi*, is "uniquely probative of untruthfulness" compared to his other convictions. Notwithstanding that distinction, a reasonable jurist could conclude that the undisclosed conviction was merely cumulative of the other convictions that were disclosed to the defense or was rendered cumulative by the revelation to the jury of at least one prior conviction.

Based on the foregoing, we find that the state court's determination did not "involve[] an unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). As we have previously explained, "given that the Supreme Court has stated the *Brady* disclosure requirement at a high level of generality," a state court has "substantial leeway" in deciding whether it is satisfied. *Cobb v. Thaler*, 682 F.3d 364, 379 (5th Cir. 2012); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). In this case, we cannot say that the state court's

application of *Brady* was unreasonable. *See Harrington*, 562 U.S. at 103 (holding that, to warrant habeas relief, a state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

## B. State Court's Determination of the Facts

In attempting to argue under § 2254(d)(2) that the "state court decision was based on an unreasonable determination of the facts," Reeder essentially reiterates his argument under § 2254(d)(1). Rather than challenge the state court's factual findings, Reeder again contends that the state court unreasonably concluded "that the suppressed evidence of Price's conviction for lying was not evidence that casts the jury verdict in a different light." Reeder thus fails to advance an argument cognizable under § 2254(d)(2).[8] *See Buntion v. Quarterman*, 524 F.3d 664, 671 (5th Cir. 2008) (distinguishing a state court's "legal error" from the kind of "unreasonable factual determination" evaluated under § 2254(d)(2)). Indeed, *Brady* claims are properly considered under § 2254(d)(1) rather than § 2254(d)(2) because they "involve mixed questions of law and fact." *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 573 (2018).

---

[8] At oral argument, Reeder raised a previously-unbriefed factual issue. Reeder argued that the Louisiana Fourth Circuit Court of Appeal erroneously found that evidence of Price's federal conviction for being a felon in possession of a firearm was disclosed prior to Reeder's first trial. Reeder misreads the state court's opinion on this issue. The court stated only that "the state knew about at least one of Earl Price's federal convictions prior to the first trial" and reasoned that "Price's admission at the first trial that he had at least one [federal conviction] put the defense on notice about that conviction." Reeder has not provided "clear and convincing evidence" that this finding is erroneous. *Leal*, 428 F.3d at 548. Nor could he. In Reeder's own briefing before the state court, he cited Price's testimony from the first trial, in which Price admitted to having spent time in federal custody for having "a concealed weapon, a .38 special."

No. 17-30351

We thus reject Reeder's argument that the Louisiana Fourth Circuit Court of Appeal's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.